STUCCO COTTON DUSTER COMPANY v. COMET ELECTRIC COMPANY.

[No. 13,740. Filed March 15, 1932. Rehearing denied July 27, 1932. Transfer denied February 3, 1933.]

*Jones, Hammond & Buschman, Leo M. Gardner* and *Robert C. Kewley,* for appellant.

*Smith, Remster, Hornbrook & Smith,* for appellee.

KIME, J.—The appellant herein, who was the plaintiff below, had acquired the sole and exclusive ownership of an invention for the construction and operation of a certain type of powder dusting machine and non-clogging conveying and measuring device used in connection therewith. The ownership of these inventions was acquired from one Louis Carroll Stukenborg, the inventor of the machine, who had made application for letters patent of the United States, and which application was filed on November 22, 1922, and bears Serial No. 603648,

and James Harold Cooper, who, with the above mentioned Stukenborg, had made joint application for letters patent of the United States for the machine, measuring and conveying device, and which latter application was filed on August 13, 1923, and bears Serial No. 657167.

On January 2, 1924, appellant entered into a written contract with appellee whereby the latter agreed to manufacture and sell machines embodying the aforesaid inventions on a royalty basis. There was a stipulation in the contract whereby appellee guaranteed to appellant the current license fee (being $25.00 on each machine manufactured and sold) on at least 200 machines in the calendar year 1924, which, in effect, was a guarantee to appellant of at least $5,000.00 for the year 1924. The contract in question is quite lengthy and it is unnecessary to set same out in full. Paragraph 8, which we deem pertinent to the issues here involved, is as follows:

"The provisions for payment of license fees contained in this agreement are predicated chiefly upon the granting, by the United States Patent Office, of one or more of the claims (covered by the application for letters patent of the United States, filed on August 13, 1923, and bearing the Serial No. 657,-167) which describe a spiral, nonclogging powder conveying and graduating device consisting in general of a helical or spiral conveyor having as its principal feature a shaft, extending through its central portion, which does not rotate at all, or at most at a slower rate of speed than that of the helix or spiral element. In the event that such claim or claims are all denied by the United States Patent Office, all license fees as such, and guarantees thereof provided under paragraphs 7 A, B, C, and D of this agreement shall abate. Pending such appeal from such ruling of the United States Patent Office (which appeal must be perfected within ninety (90) days of the denial of all such claims) the sums which would have been due the Licensor from the Licensee under paragraphs A, B, C, and D of the agreement shall be deposited on the dates on which

they would have been due to the account of The Union Trust Company of Indianapolis, Trustee. In the event of a final reversal of such denial resulting in the granting of such claim or claims, the sums so on deposit shall become payable to the Licensor. In the event of the final affirmance of such denial, such sums so on deposit shall revert to the Licensee."

Paragraph 15 contains the following language:

"The Licensee shall have the right to terminate this agreement at the end of any calendar year by mailing to the Licensor written notice to that effect at least three months prior to the end of such year, such notice to be sent by registered letter addressed to the Licensor at its last known place of business; but the Licensee shall have the right, nevertheless, to sell all of such machines and repair parts which it has on hand at the time of such termination, upon paying to the Licensor license fees at the rate hereinbefore specified."

It appears from the evidence that appellee operated under this contract until September 27, 1924, at which time it sent a letter to appellant stating that it considered the contract void, first for lack of mutuality, and second, by reason of appellant's failure to perfect an appeal within ninety days from the denial of claims as provided in paragraph 8 as set out above. The same letter also informed appellant that appellee was exercising its power under paragraph 15, above set out, namely: that of terminating the contract at the end of the first year. At the trial of this cause these defenses were apparently abandoned, as the question of mutuality was raised by demurrer, and the trial court decided same adversely to appellee.

Appellant's complaint sought damages in the sum of $4,875.00, alleging that $125.00 had been paid in April, 1924, the latter sum representing the guaranty for the months of January, February and March, 1924. A demurrer to this complaint was overruled. Appellee there-

upon filed an answer in general denial and five additional paragraphs. Paragraphs two, three and four alleged. that appellee had been induced to execute the contract by fraudulent misrepresentation and fraudulent concealment as to material facts relative to the standing of one of the patent applications in the Patent Office, and that appellee, within a reasonable time after the discovery of such alleged fraud, elected to rescind and cancel its obligation under the contract. The material facts alleged in these paragraphs of answer were found by the court in its special findings numbered 2, 3, and 4. Paragraph five of the answer alleged a breach by appellant of its obligation to prosecute the patent applications with diligence, and paragraph six alleged a breach by appellant of its express obligation to procure the granting of one or more of the claims of application No. 657,167. Appellant filed a reply in general denial to the second, third, fourth, fifth, and sixth paragraphs of answer above enumerated and the issues were thus closed. Both appellant and appellee filed a request for a special finding of facts. The court made such special findings of facts and conclusions of law thereon and rendered judgment against appellant on its complaint and also for costs.

The errors herein assigned are the action of the court in overruling appellant's motion to strike out certain interrogatories of appellee, also that the court erred in its conclusion of law on the facts found and that the court erred in overruling appellant's motion for a new trial. Under the latter specification appellant particularly relies upon the specifications to the effect that the decision is not sustained by sufficient evidence, that the decision is contrary to law, and certain specifications pointing out wherein it is contended that the court committed errors of law on the trial of said cause.

A careful study of the matters before us discloses

that appellee's principal defense at the trial of this cause was the alleged failure of appellant to proceed with reasonable diligence in procuring the patents, and also the alleged fraud of appellant in procuring appellee to enter into the contract in question. These matters are properly presented for our consideration, and under the assignment questioning the sufficiency of the evidence to sustain the finding it becomes our duty to examine the same.

From the language of paragraph 8 of the contract it can readily be seen that time sooner than that specified was not the essence of the contract. What was desired by the appellee was the patented invention, and, since under the contract here they thought enough of the idea to enter into a contract to manufacture pending the granting of the patent, there is certainly nothing in their contention that the applications were not pursued with reasonable diligence. There is absolutely no evidence as to whether or not the applicants or their attorneys were preparing revised claims to be filed and if so the time that was necessary to so prepare them. In the absence of such a showing the court can not say that because a certain time elapsed that the appellant did not use reasonable diligence. That depends upon the circumstances of each particular case and in the absence of evidence this can not be arbitrarily found.

The trial court, in its special finding of facts number 6, found that "the procuring of a patent under application numbered 603,648 was an essential and material consideration for defendant's agreement to pay the license fees stipulated in said contract, and plaintiff took no further steps to procure a patent under said application, *but wholly abandoned the same, and no patent thereon was ever granted.*" (Our italics.) upon a careful examination of the evidence we fail to

find anything which would tend to support said finding number 6 to the effect that the application was abandoned and no patent was ever granted, other than the answer of Paul H. White, president of appellee, to a question of whether or not he knew if a patent had ever been issued on application No. 603,648, to which he replied: "It has not to my knowledge." This is wholly insufficient to warrant the finding in question. A showing of Patent Office records would have been the proper and positive manner of making such proof. However, it was doubtful as to whether or not appellant was under any positive duty to perfect the above patent in view of the fact that paragraph 8 of the contract states that the agreement is predicated *chiefly* upon the granting of one or more of the claims set forth in the *joint application*. If there were any such duties upon the part of the appellant, they should have been set forth in the contract, and the trial court was not justified in writing any such duties into his special findings of fact.

A further study of paragraph 8 of the contract reveals that the license fees and guarantees were to abate in the event "such claim or claims" were all *denied* by the United States Patent Office. The statement "such claim or claims" unquestionably has reference to the application which describes a spiral, non-clogging powder conveying and graduating device consisting in general of a helical, etc., etc. From this it is quite evident that the granting of a patent on application No. 657,167, which embodied both the machine and the non-clogging and conveying device, was the vital feature of the contract. The evidence shows that on December 17, 1923, the United States Patent Office wrote to one Mr. Hall of Chicago, Ill., the appellant's patent attorney, advising him that the claims pertaining to the non-clogging, measuring and graduating device had

been rejected. The court, in its special finding of fact No. 3, stated that this rejection "was known to the plaintiff and to said Louis Carroll Stukenborg at and prior to the time that the contract above mentioned was executed by defendant." There is absolutely no evidence in the record to support such a finding. Quoting further from this finding the court says: "That during the progress of the negotiations prior to the execution of said contract by defendant, the plaintiff, in order to induce defendant to enter into said contract, concealed from defendant the fact that all claims of said application numbered 657,167 describing said spiral, non-clogging, powder conveying and graduating device had been rejected." There is likewise no testimony in the record showing any such concealment. In order to reach the above findings the court must have assumed that the letter from the Patent Office reached the attorney Hall prior to the time of the negotiations, that Hall communicated the same to the appellant company, although there is nothing in the record to show the same, and that appellant actually concealed the fact. The only statement in the record from which an inference of concealment could be drawn is the following question and answer thereto by the aforementioned Mr. White:

"Q. Was there any express representation by Mr. Cooper or by Mr. Stukenborg or Mr. Carter or by any other officer or agent of the plaintiff taking part in this conference that the application was in good standing?
"A. They did, and presented me with a complete set of files on the application which they assured me their attorney felt confident were strong claims as set forth in those papers."

The evidence fails to show that such representation was made after the claims had been rejected by the United States Patent Office. The fact that the claims had been rejected did not render false the statement

that they were in good standing because the Primary Examiner of the Patent Office gave new references and reasons for rejection which permitted amendments thereto. Rules of Practice of the United States Patent Office 65 and 68. These rules were introduced in evidence and provide that an applicant can amend as often as new references and reasons for rejections are presented by the examiner. There can not be an appeal until there have been two rejections of the same claim as originally filed, or if amended in matter of substance, of the amended claim. It will also be noted that a mere rejection was contemplated and provided for in the contract, paragraph 8 of same providing for the abatement of royalties only in the event of a denial of the claims (denial meaning two rejections). It is appellant's contention that even if the rejection had taken place it was not material, since such rejection did not necessarily effect its good standing, and the claim could be cured by amendment. With this we concur.

In our opinion the term "good standing" as used in the instant case with reference to the patent application is insufficient to constitute a false representation for the reason that the same is a legal conclusion, the status of which appellee was capable of ascertaining for himself. Assuming that appellant did know of the rejection, it is a general rule of law that fraud can not be predicated on a failure to disclose facts where the information is as accessible to one as to the other, and the truth may be ascertained by the exercise of reasonable diligence.

It will further be noted that appellee's president, by his own testimony, stated that he was presented with a *complete* set of files on the application. It is a fair and reasonable inference to assume that such files were complete to the date they were presented to Mr. White, at which time the representation that the claims were in

"good standing" was made, and at which time the negotiations and representations leading up to the consummation of the contract were presumably made.

It is our opinion that appellee has failed to prove a false material representation or concealment, and this court will not sanction the finding of so serious a charge of fraud in the absence of proof of the essential elements of fraud.

In view of the above it therefore becomes necessary for us to reverse this judgment and remand same to the lower court with instructions that appellant's motion for a new trial be granted and for further proceedings not inconsistent with this opinion.

Reversed with instructions that appellant's motion for a new trial be granted.