**Ray A. NEFF and Augusta M. Neff, Appellants (Plaintiffs Below),**

v.

**INDIANA STATE UNIVERSITY BOARD OF TRUSTEES FOR AND ON BEHALF OF INDIANA STATE UNIVERSITY, James E. Sullivan, Benjamin G. Cox, Gilbert W. Gambill, Jr., David W. Sullivan, Robert L. Gowdy, Louis F. Britton and Benjamin G. Cox, Jr., Appellees (Defendants Below).**

No. 11A04–8809–CV–297.

Court of Appeals of Indiana, Fourth District.

May 16, 1989.

Rehearing Denied June 12, 1989.

Robert W. York & Associates, Indianapolis, for appellants.

Gus Sacopulos, David R. Bolk, Sacopulos, Johnson & Hahn, Terre Haute, for appellees.

CONOVER, Presiding Judge.

Plaintiffs–Appellants Ray and Augusta Neff (together Neff) appeal a grant of summary judgment in favor of Defendant–Appellee James E. Sullivan and other members of his law firm.

We affirm.

Neff presents four issues. Because resolution of the first and fourth issues is dispositive of the appeal, we discuss only these two.[1] They are:

---

**1.** Neff's issue 2, whether Sullivan's purported representations about TIAA funds were made without the authority of his principal, ISU, and therefore he should be held personally liable for them, is necessarily resolved by our discussion of issue 1. Neff's issue 3, whether any tort

1. whether summary judgment was precluded by the existence of a genuine issue of material fact; and

2. whether the court's failure to make findings of fact and conclusions of law was reversible error.

Neff obtained a $90,000 jury judgment against Indiana State University (ISU) in 1982. According to the parties ISU appealed, but the appeal was dismissed after the parties entered into the settlement agreement which is the basis of this litigation. The settlement agreement, dated October 17, 1983, provided, in relevant part, for a lump sum payment of $49,500 and for monthly payments as follows:

6. *PAYMENTS TO NEFF.*

The UNIVERSITY shall grant to NEFF the additional benefits as follows:

.   .   .   .   .

(b) *Monthly Payments for Life.* Beginning July 1, 1984, NEFF shall receive a monthly stipend in the amounts and for the periods as follows:

(i) July 1, 1984, through December 1, 1984, Eight Hundred Ninety–Four and 00/100 Dollars ($894.00) per month.

(ii) January 1, 1985, through December 1, 1985, Eight Hundred Ninety–Four and 00/100 Dollars ($894.00) per month.

(iii) Beginning January 1, 1986, and continuing on the 1st day of each subsequent month thereafter, Three Hundred Forty–One and 00/100 Dollars ($341.00) per month until the latter of: (1) the death of Ray A. Neff; (2) the 1st day of June, 2004; and (3) if Ray A. Neff dies prior to the 1st day of June, 2004, NEFF's estate shall receive any remaining monthly payments.

(R. 28). The agreement also provided:

7. *PURCHASE OF ANNUITY.*

UNIVERSITY shall purchase an annuity contract with a life insurance company in a sufficient amount to yield each month the sums provided for in subpara-

graph (b) of paragraph 6 of this Agreement. This annuity contract is purchased by the UNIVERSITY for the sole purpose of providing NEFF with a source of funds to satisfy the obligations owed by the UNIVERSITY to NEFF pursuant to subparagraph (b) of paragraph 6 of this Agreement.

(R. 28). In addition, the agreement provided:

1. *WARRANTIES.*

(a) All parties warrant and represent each to the other that they have been fully informed and have full knowledge of the terms, conditions and effects of this Agreement.

(b) All parties warrant and represent each to the other they have, either personally or to their attorney or attorneys, fully investigated to such party's full satisfaction all facts surrounding the various claims, controversies and disputes and are fully satisfied with the terms and effects of this Agreement.

(c) All parties warrant and represent, each to the other that no promise or inducement has been offered or made except as herein set forth, and that this SETTLEMENT AGREEMENT is executed without reliance upon any statement or representation other than those contained herein.

(d) All parties warrant and represent, each to the other that the settlement contemplated herein covers all claims which NEFF personally and/or his wife may have against Indiana State University, its Board of Trustees, or any of its officers, agents, and/or employees and also any claim which Indiana State University, its Board of Trustees, its president, or any of its officers may have against NEFF and each party agrees to indemnify the other for any cost or expense incurred in connection with the defense of any such claim or loss suffered on account of such claim.

(R. 26–27).

On May 30, 1986, Neff sued ISU and its attorneys: James E. Sullivan, Benjamin G.

---

immunity of Sullivan's client devolved to him, was not argued below (as to Sullivan) and is not

an issue properly before us.

Cox, Gilbert W. Gambill, Jr., David W. Sullivan, Robert L. Gowdy, Louis F. Britton, and Benjamin G. Cox, Jr. (together Sullivan). In pertinent part, the complaint alleged the purpose of the annuity provided by paragraph 7 to fund paragraph 6(b) of the agreement was to insure a total monthly income of $1,500 when the amounts of paragraph 6(b) were added together with Social Security benefits and a teacher's pension fund identified as TIAA. The complaint alleged ISU and Sullivan specifically represented to Neff's attorneys the TIAA component would be $606 per month and, the complaint claimed, ISU and Sullivan had superior and exclusive access to information about TIAA. The complaint asserted ISU and Sullivan expressly represented the funding annuity would be sufficient to yield $1,500 per month when combined with TIAA and Social Security. The complaint asserted these were facts known only by ISU and Sullivan and the representations were made to induce Neff to sign the agreement. It asserted these were fraudulent misrepresentations. The complaint alleged the annuity did not provide sufficient income to meet the alleged $1,500 goal.

Sullivan and ISU separately moved for summary judgment. Sullivan supported his motion with a memorandum, affidavits, and Neff's response to interrogatories. Neff responded with a motion to deny Sullivan's motion for summary judgment, a memorandum, and affidavits. Neff asked for additional discovery. ISU and Neff settled after entry of summary judgment and any issue about summary judgment in ISU's favor is not before this court.

The trial court granted Sullivan's motion on May 4, 1988. The trial court generally found no genuine issue of material fact and it concluded all defendants were entitled to judgment as a matter of law. On May 19, 1988, the trial court entered judgment in Sullivan's favor. The court did not make specific findings and conclusions. The court denied Neff's motion to correct error and he appeals. Additional facts, as necessary, are included below.

## I.

As we frequently note, summary judgment is appropriate only in limited situations. To get a summary judgment the moving party carries the burden of establishing there is no issue as to any material fact and he is entitled to judgment as a matter of law. If the movant's pleadings, affidavits, answers to interrogatories, or other evidence establish the lack of a material factual issue the nonmovant, to stave off summary judgment, must respond with admissible evidence to show the contrary. When reviewing a grant of summary judgment we stand in the shoes of the trial court. All evidence is construed in favor of the nonmovant and all doubts as to the existence of a material fact are resolved against the movant. Summary judgment is inappropriate if conflicting inferences arise from undisputed facts. E.g. *ITT Commercial Finance Corp. v. Union Bank & Trust Co. of North Vernon* (1988), Ind. App., 528 N.E.2d 1149, 1151–1152; Ind. Rules of Procedure, Trial Rule 56(E).

■ Neff first argues there are genuine issues of fact concerning whether Sullivan fraudulently induced him and his attorneys into agreeing to the settlement. Neff claims the evidence presented by his affidavits and exhibits show Sullivan misrepresented the total amount he would receive by misrepresenting the amount of TIAA payments Neff would be entitled to receive. Neff asserts the information about TIAA payment amounts was solely within Sullivan's and ISU's knowledge; he and his attorneys relied upon Sullivan's purported misrepresentation; and, by so relying, wrongly determined present value of the periodic payments to be made to him under paragraph 6(b) quoted above. Neff argues the evidence he provided in response to the summary judgment motion shows a genuine issue about whether he was defrauded.

Sullivan argues there are no genuine issues as to any material fact because Neff fails to distinguish between a proposed settlement agreement and the executed settlement agreement. Sullivan argues all of Neff's affidavits and exhibits refer only to the unexecuted draft proposal, not to the

executed final agreement; all prior negotiations merged into the final agreement; the final agreement neither guaranteed a total income of $1,500 per month nor made representations about TIAA payments; and, thus, any evidence about the proposed agreement was not relevant or material to issues of compliance with the executed agreement. Sullivan argues the provisions of the settlement agreement are clear and unambiguous, Neff should be held to his warranties of full investigation of facts, and to the release provisions of the agreement. Sullivan further posits the trial court could not look outside the written agreement to consider the motives and objectives of the parties when entering into the settlement agreement because the agreement, he opines, is neither ambiguous nor unclear. Further, Sullivan claims, if we assume Sullivan misrepresented the total amount of future payments from all three sources, as Neff alleges, that misrepresentation concerned future events and cannot therefore serve as a basis for an action in fraud. Sullivan emphasizes the negotiations resulting in the settlement agreement here were arms length transactions in which Neff was ably represented by two attorneys.

We have often noted fraud is defined as a material misrepresentation of a past or existing fact, which representation is false and made with knowledge or reckless ignorance of the falsity, and which causes reliance upon the misrepresentation to the detriment of the person so relying. E.g. *Pugh's IGA v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1197; *Captain and Co., Inc. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 96; *Whiteco Properties, Inc. v. Thielbar* (1984), Ind. App., 467 N.E.2d 433, 436. The complaining party must have had the right to rely upon the purported misrepresentations. E.g. *Pugh's IGA, supra,* 531 N.E.2d at 1198; *Captain and Co., supra,* 505 N.E.2d at 96–97. Whether one has the right to rely depends largely on the facts of the case. *Captain and Co., supra,* 505 N.E.2d at 96.

In this case then, summary judgment was proper only if (1) the undisputed evidence shows either the representation about TIAA income was not made, or, (2) if made, was not a material fact inducing the settlement agreement, or, (3) was not a representation upon which Neff and his attorneys had a right to rely.

The trial court did not err by entering summary judgment below. No matter what representations Sullivan made, if any, the undisputed facts and the reasonable inferences arising therefrom show Neff and his attorneys had no right to rely upon any representations about TIAA payments, if those payments were relevant at all.

In his affidavit, Sullivan averred ISU did not have control over TIAA or the amount of TIAA payments. He averred Neff could have discovered the TIAA account's actual value and could select among TIAA's payment options. (R. 53, ¶ 8). In spite of Neff's assertion to the contrary here, the affidavit of one of Neff's attorneys, John F. Ittenbach, stated Neff had access to TIAA information. In avoidance, however, Ittenbach averred it would have taken him up to eight weeks to independently verify the TIAA information. Because Sullivan wanted to settle the matter within the time remaining to ISU to perfect its appeal from the $90,000 judgment, he relied upon Sullivan's representations as to the monthly amounts Neff would receive from TIAA.

Further, it is clear and undisputable, Sullivan on the one hand and Neff and his attorneys on the other were at all times adverse parties dealing at arms length. These parties had engaged in severe, lengthy, intense litigation resulting in a judgment favorable to Neff. At all times Neff was ably represented by counsel who advised him. Neither Neff nor his attorneys had any right to rely upon any representations of fact, if any, made by Sullivan because Sullivan never occupied a dominant position and Neff, et al. a subordinate one, one prerequisite to a right of reliance in such situations.

Neff and his counsel, according to Ittenbach's affidavit, had access to the information which would have permitted them to verify the extent of TIAA payments.

Upon this single material fact the affidavits submitted in support of Sullivan's motion for summary judgment and in opposition to that motion by Ittenbach are in agreement. The only reasonable inference is Neff elected to take the settlement offer at the time it was offered instead of independently investigating the total amount of TIAA payments he would receive. Any risk assumed as a result of electing this negotiating tactic was voluntarily assumed and any blame for failure to investigate the facts to assure Neff's self-interest cannot be placed on Sullivan. Cf. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, 473 (purchaser may rely upon vendor's statements of fact if they are not obviously false and if the purchaser lacks facilities for ascertaining the truth as where the facts are particularly within the knowledge of the vendor); *Wisconics Engineering, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, 756–758, *reh. denied, trans. denied* (sophisticated business buyers dealing at arm's length with sellers and with access to information had no right to rely upon seller's representation as to value); *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756, 762 (where persons stand mentally on an equal footing and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment); and *Stucco Cotton Duster Co. v. Comet Electric Co.* (1932), 95 Ind. App. 672, 680, 180 N.E. 185, 188 (generally, fraud cannot be predicated on a failure to disclose facts where information is as accessable to one as to the other and truth is ascertainable by exercise of reasonable diligence).

## II.

Neff contends the trial court's failure to make findings and conclusions is reversible error because there is no way for either party or the court to determine the basis of the trial court's decision.

Although they facilitate review, findings of fact and conclusions of law are not required on summary judgment. *Jenkins v. Nebo Properties, Inc.* (1982), Ind.App., 439 N.E.2d 686, 690. To determine whether summary judgment was properly granted we, like the trial court, must review the pleadings, evidence, and arguments submitted in support of and in opposition to the motion for summary judgment. Thus, appellate review is not hampered by a lack of findings and conclusions and provides no basis upon which to reverse the court's decision. The trial court did not err by failing to make findings and conclusions.

Affirmed.

RATLIFF, C.J. and MILLER, J., concur.