**FIRE INSURANCE EXCHANGE, Illinois Farmers Insurance Company, Farmers Group, Inc. d/b/a Farmers Underwriters Association, Ice Miller Donadio & Ryan and Phillip R. Scaletta, Appellants–Respondents,**

v.

**Jason T. BELL, by his Guardian, Ruby BELL, Appellee–Petitioner.**

No. 49A02–9308–CV–415.

Court of Appeals of Indiana, Second District.

May 5, 1994.

**518**

William P. Wooden and Daniel D. Trachtman, Wooden McLaughlin & Sterner, Indianapolis, for appellants Ice Miller Donadio & Ryan and Scaletta.

Bryce H. Bennett, Jr., Elizabeth H. Knotts and Barry C. Paige, Riley Bennett & Egloff, Indianapolis, for appellants Illinois Farmers Ins. Co.

Robert G. Barker and Jennifer L. Graham, Price & Barker, Indianapolis, for appellee.

FRIEDLANDER, Judge.

This is an interlocutory appeal wherein the appellants-defendants Fire Insurance Exchange, Illinois Farmers Insurance Company, Farmers Group, Inc. d/b/a Farmers Underwriters Association (Farmers), the law firm of Ice Miller Donadio & Ryan (Ice Miller), and Phillip R. Scaletta (Scaletta), a partner with Ice Miller [collectively referred to as appellants], are appealing the trial court's denial of their motion for summary judgment. Jason Bell (Jason) claimed that the appellants fraudulently misrepresented the amount of a homeowner's insurance policy limit to Robert Collins (Collins), an attorney who represented Jason Bell (Jason) as to his claim against Farmers. In denying the summary judgment motions, the trial court determined that the question of whether Jason's legal counsel had the right to rely upon the misrepresentations regarding the policy limits is a question for the factfinder to resolve.

We affirm.

The facts most favorable to Jason, the nonmoving party, are as follows. On May 28, 1985, sixteen-month-old Jason was severely burned in a fire. The fire occurred in Indianapolis at the house of Joseph Moore (Moore), Jason's grandfather. Gasoline had leaked onto the floor of Moore's utility room which was ignited by a water heater. The fire department cited Moore for the careless storage of gasoline.

Farmers was the carrier for Moore's homeowner's policy. Dennis Shank (Shank) served as claims manager for Farmers, and Scaletta represented Farmers. Jason's mother, Ruby Bell (Bell), retained Collins to represent Jason regarding his claims for injuries sustained in the fire.

Collins communicated with Scaletta and Shank on many occasions in an effort to obtain information regarding the insurance policy limits. By late October, 1985, Farmers informed Scaletta that Moore had a policy limit of $300,000. In February, 1986, Scaletta told Collins that he did not know the policy limits, even though Farmers had already provided Scaletta with this information. Collins claimed that Scaletta and Shank told him on separate occasions that Moore had a $100,000 policy limit. Scaletta confirmed his misrepresentation to Collins in a letter he wrote to Shank on February 14, 1986.

When Jason's condition stabilized, Shank and Scaletta each represented to Collins that Farmers would pay the $100,000 policy limit. As a result of these conversations, Collins advised Bell to settle. The agreement was approved by the probate court, and after settling with Farmers, Bell filed a products liability action against the manufacturer of Moore's water heater. The company refused

to pay more than $100,000 since that was all Farmers had paid. Collins made it clear to the company that the $100,000 settlement was made because that was the policy limit. The water heater company's attorney informed Collins that the policy limit was actually $300,000.

Collins informed Bell that he had been deceived and advised her to seek independent counsel to assert claims against Farmers and Ice Miller as a result of the misrepresented policy limits. Bell filed a complaint against the appellants, alleging they had fraudulently misrepresented the insurance policy limits. Bell also included a count for attorney deceit.

The trial court denied the appellants' motions for summary judgment as to the claim for actual fraud, and granted summary judgment in favor of Ice Miller and Scaletta regarding Bell's attorney deceit claim. Findings of fact and conclusions of law were entered which provided in relevant part as follows:

### "Findings of Fact

1. On May 28, 1985, Jason Bell ('Bell') was injured in a fire which occurred at the home of Joseph Moore ('Moore'), his grandfather.

2. Robert Collins ('Collins'), an Indianapolis attorney, was retained by Ruby Bell, Jason's mother, to represent Jason.

3. Collins notified Farmers that Bell was making a claim against Moore for injuries received in the fire.

4. Farmers retained Phillip R. Scaletta ('Scaletta'), an Ice Miller Donadio & Ryan partner, to defend the Bell claim.

5. During late 1985 and the first part of 1986, Collins requested that Farmers disclose the liability limit of Moore's policy.

6. Throughout the early negotiations, Farmers refused to reveal to Collins the liability limit of Moore's policy.

7. During the negotiations, Bell would not authorize Collins to initiate litigation against Moore, her father.

8. During the late summer or early fall of 1986, Farmers, through Shank, and Ice Miller, through Scaletta, represented to Collins that Farmers would pay Bell and Moore policy limits of $100,000.

9. Bell, through Collins, relied upon the representations of Shank and Scaletta and settled Bell's claim against Farmers for $100,000.

10. After the Bell–Farmers settlement, Collins discovered that the policy limits on Moore's policy was $300,000, not $100,000, and this litigation was initiated.

### Conclusions of Law

.     .     .     .     .

2. Bell has asserted two claims against the Defendants, one based upon actual fraud and a second on an alleged violation of Ind.Code § 31–1–60–9.

.     .     .     .     .

7. Count I of Plaintiffs' Amended Complaint is based upon actual fraud. Under Indiana law, a prima facie case of actual fraud consists of a misrepresentation of a material fact, scienter, deception, reliance and injury. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, 436.

8. Reliance, as an element of fraud, consists of both the fact of reliance and the right to rely. *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756, 761.

9. The right of reliance is a question of law when the evidence is clear and only one reasonable inference can be drawn. *Plymale v. Upright*, 419 N.E.2d at 763. However, where the evidence is not clear and more than one reasonable inference can be drawn, the right of reliance is a question for the trier of fact. [Citations omitted].

10. For the purposes of Defendants' Motions for Summary Judgment, this Court must accept as true, Collins' testimony that both Scaletta and Shank misrepresented the policy limits on Moore's policy and that he and Bell relied on their representations and, in reliance, settled Bell's claim against Farmers.

11. Under these circumstances, the determination of whether Collins acted reasonably is not a question of law, but a

question for the trier of fact. Under Indiana law, a person has the right to rely upon representations where the existence of reasonable prudence does not dictate otherwise. *Soft Water Utilities, Inc. v. LeFever* [LeFevre] (1974), 159 Ind.App. 529, 308 N.E.2d 395, 398. Whether Collins and Bell acted reasonably is a question for the trier of fact.

12. Indiana law also has held that under certain circumstances attorneys have the right to rely upon representations made by other attorneys, even when the truthfulness of the representation could have been determined by information available to the attorney. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630. As such, whether Bell and Collins had the right to rely on Scaletta's representation as to the Moore policy limits is a question for the trier of fact.

13. Count II of Plaintiffs' Amended complaint is based upon an alleged violation of the attorneys deceit statute found at Ind. Code § 34–1–60–9.

14. The Indiana Court of Appeals in *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, held that Ind.Code § 34–1–60–9 does not create a separate cause of action, it provides [sic] an additional remedy to a claimant who has established a prima facie case of actual fraud.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that (1) as to Plaintiff's claim for actual fraud, the motions for summary judgment filed by all Defendants are denied; and (2) as to Plaintiff's Ind.Code § 34–1–60–9 claim, the motion for summary judgment filed by Defendants Ice Miller Donadio & Ryan and Phillip R. Scaletta is granted."

*Record* at 969–74.

The appellants present the following issue for review:

Did the trial court properly deny the appellants' motions for summary judgment in determining that Collins's right to rely upon the representations made to him by Scaletta were questions of fact for the jury?

The trial court properly denied the motions for summary judgment, and we reject the appellants' argument that Collins had no right, as a matter of law, to rely upon Scaletta's representations.

The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law, thus eliminating unnecessary burdens on litigants. *Indiana Farm Bureau Co-op Ass'n, Inc. v. AgMax, Inc.* (1993), Ind.App., 622 N.E.2d 206. When reviewing the denial of a motion for summary judgment, this court must determine whether there are any designated genuine issues of material fact and whether the law was correctly applied. *Citizens Nat'l Bank of Tipton v. Indianapolis Auto Auction* (1992), Ind.App., 592 N.E.2d 1256.

Summary judgment is appropriate when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Perry v. Stitzer Buick, GMC, Inc.* (1992), Ind.App., 604 N.E.2d 613. In determining whether there is a genuine issue of material fact precluding summary judgment, all doubts must be resolved against the moving party and facts properly designated by the party opposing the motion must be accepted as true. *Jarvis Drilling, Inc. v. Midwest Oil Producing Co.* (1993), Ind.App., 626 N.E.2d 821. Even though conflicting facts and inferences may exist regarding certain elements of a claim, summary judgment is properly granted when there is no dispute as to facts which are dispositive of the matter. *Farm Equip. Store v. White Farm Equip. Co.* (1992), Ind.App., 596 N.E.2d 274.

As the findings of fact and conclusions of law indicate, the trial court determined that the question of whether Bell had the right to rely upon the independent and identical misrepresentations made by Scaletta and Shank regarding the policy limits is a question for the jury. This court has determined that a party's right to rely is a question of fact for the jury. Specifically, "a person has a *right to rely* upon representations *where the exercise of reasonable prudence does not dictate otherwise.* *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756

(emphasis in original) (quoting *Voorhees v. Cragan* (1916), 61 Ind.App. 690, 112 N.E. 826).

Bell contends, and we agree, that *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630 is dispositive of the summary judgment issue before us. In *Carrell,* attorney Henthorn intentionally misrepresented facts within his knowledge to Bennett, the opposing counsel. These misrepresentations were made in an effort to gain an advantage for Henthorn's client. The misrepresented information was a matter of public record which Bennett could have verified by independent investigation. Henthorn knew that Bennett lacked the correct information when the misrepresentation was made. This court determined that "deception, reliance, (and) whether Bennett exercised due care, are all factual matters to be determined by a trial." *Id.* at 636. And so it is here.

The record before us reflects that Collins testified that Scaletta and Shank both misrepresented the amount of the insurance policy limits to him on separate occasions. As in *Carrell,* these misrepresentations were most likely made to obtain an advantage for Farmers, i.e., a "savings" of $200,000. While the information in *Carrell* was available to Henthorn by means of public record, the policy limits were only available through Shank or Scaletta during the period of settlement negotiations unless formal litigation was instituted. Collins testified that both men told him that the policy limit was $100,-000, and that Farmers was willing to pay those limits to settle the matter. As pointed out in *Carrell,* Collins's testimony must be considered as true, and Bell is entitled to every reasonable inference flowing from this evidence.

We reject the appellants' reliance upon *Neff v. Indiana State Univ. Bd. of Trustees, trans. denied,* (1989), Ind.App., 538 N.E.2d 255, which concluded that the plaintiff and his attorneys had no right to rely upon any representation regarding particular payments that were to be made to the plaintiff by the University. In *Neff,* this court affirmed the trial court's entry of summary judgment when the plaintiff contended he was induced to settle his case by the fraudu-

lent representations of Indiana State's counsel. The University appealed a $90,000 judgment awarded to Neff, but it dismissed the appeal after the parties entered into a settlement agreement. The agreement provided that Neff was to receive a lump sum cash payment and the University was to purchase an annuity which would pay a monthly stipend to Neff. Neff alleged that the University's counsel misrepresented to his attorney that there would be a $606.00 per month pension payment and that this amount, when combined with annuity and social security payments to which Neff was entitled, would be sufficient to yield $1,500 per month. Neff contended that the settlement was procured by fraud because the University's attorney made specific representations regarding the pension payment and had superior and exclusive access to this type of information.

On appeal, this court determined that Neff and his attorneys had no right to rely on University counsel's representations because Neff "had access to the information which would have permitted them to verify the extent of [the] payments." *Id.* at 258. There is no evidence in the record before us demonstrating that Collins actually had independent access to the policy limits which he could have verified through the exercise of reasonable diligence. Rather, it appears that Collins lacked the facilities for ascertaining the true limits of the policy because those facts were particularly within the appellants' knowledge. *See Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433. The appellants speculate that Collins *might* have been able to find other ways of determining the policy limits in order to verify the accuracy and truthfulness of the statements made by Scaletta and Shank before deciding to settle Bell's claim. Brief of Appellant Illinois Farmers Insurance Company at 25.

■ While a person relying on another's representations must use ordinary care and diligence to guard against fraud, "the requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practiced on the unwary." *Plymale, supra* at 762 (quoting *Soft Water Utilities, Inc. v. LeFevre* (1974), 159 Ind.App. 529 at 536–37,

308 N.E.2d 395, 398). Although legal counsel in a position such as Collins is required to exercise reasonable diligence in an effort to independently ascertain information as a duty to his client, *Neff* makes it clear "whether one has the right to rely depends largely on the facts of the case." *Neff* at 258.[1]

The appellants are essentially requesting this court to hold, as a matter of law, that an attorney may *never* rely upon representations made to him by adverse legal counsel. The policy of this state is to promote settlement and to efficiently resolve disputes short of litigation. We refuse to even tacitly condone the type of conduct in which attorney Scaletta allegedly engaged. If this court accepts the argument of the appellants, it may be hazardous for legal counsel to attempt to settle *any* claim, short of proceeding to the stages of formal litigation. The questions of deception, reliance, and whether Collins exercised due care are matters that should be resolved by the factfinder. *See Carrell, supra; Plymale, supra.*

The trial court, therefore, properly concluded that the question of whether Collins had the right to rely upon the appellants's misrepresentations is a question of fact for the jury to decide.

Judgment affirmed.

KIRSCH and RILEY, JJ., concur.

---

1. As Bell points out, *Neff* is inapplicable as to whether Collins had the right to rely on Shank's misrepresentation regarding the policy limits, inasmuch as the question regarding the right of an attorney to rely upon an insurance company branch manager's representation was not explored. Moreover, Ind.Code 27–4–1–4.5 expressly prohibits Shank's conduct as an unfair claim settlement practice.