**PARK 100 INVESTORS, INC.,**
**Appellant–Plaintiff,**

v.

**James T. KARTES and Nancy Kartes,**
**Appellees–Defendants.**

No. 49A05–9402–CV–50.

Court of Appeals of Indiana.

May 26, 1995.

Gene R. Leeuw, Michele J. Calderon, Klineman, Rose and Wolf, P.C., James E. Carlberg, Bose, McKinney & Evans, Indianapolis, for appellant.

Alan S. Brown, Todd J. Kaiser, Locke Reynolds Boyd & Weisell, Indianapolis, for appellees.

### OPINION

BARTEAU, Judge.

Park 100 appeals the trial court's finding that James and Nancy Kartes are not liable for unpaid rent under a personal guaranty of lease. We affirm.

### FACTS

In 1984, James and Nancy Kartes were part-owners of Kartes Video Communications, Inc. (KVC) in Indianapolis. The com-

pany was growing rapidly and required larger operating facilities. Robert Scannell, a representative of the Park 100 industrial complex in Indianapolis, contacted the Karteses and marketed facilities in Park 100 that KVC could lease. After discussing the general requirements and terms for the new facilities, James Kartes delegated all of the lease negotiations to David Kaplan, a KVC senior vice-president.

Kaplan and Scannell worked out the details for KVC's lease of Building 107 in Park 100. Park 100 provided a lease agreement form to KVC. The lease did not include any provisions for a personal guaranty of the lease and a personal guaranty was never mentioned during any of the lease negotiations. KVC's attorney approved the lease and Kaplan signed and delivered the lease to Scannell on or before July 27, 1984. KVC made preparations to move its operations into Building 107 over the weekend of July 28–29, 1984.

On Friday, July 27, 1984, the evening before KVC was to move into Building 107, Scannell went to KVC's offices at 5:00 p.m. and found the Karteses getting into their car to leave for the day. Scannell told the Karteses that he had "lease papers" for them to sign. James Kartes explained that they were late for their daughter's wedding rehearsal and asked if the matter could wait until the following Monday. Scannell informed the Karteses that the matter could not wait and that KVC could not move into Building 107 until the papers were signed.

The Karteses and Scannell then went into KVC's building, where Scannell produced a document entitled "Lease Agreement."[1] From the lobby of the building, James Kartes telephoned Kaplan, who was in another part of the building, and asked if the lease agreement had been approved by KVC's lawyer. Scannell remained silent. Upon ending his discussion with Kaplan, James Kartes asked where he was to sign the document. Scannell opened the papers to the signature page and the Karteses both signed the document. The Karteses, being officers of the corporation, did not think it unusual that their signatures would be required on the lease. Scannell never told the Karteses that what they were signing was actually a personal guaranty of lease.

Years later, Park 100 sent the Karteses a "Tenant Agreement" that included an estoppel certificate. At this time the Karteses first learned of the personal guaranty of lease. They immediately disavowed the guaranty and refused to affirm that portion of the "Tenant Agreement."

Eventually, the Kartes sold their interest in KVC to Saffron Associates, which subsequently failed to make rent payments to Park 100. Park 100 brought suit to collect the unpaid rent from the Karteses under the personal guaranty.

## ISSUE

Park 100 raises numerous issues and arguments on appeal. We find that one issue is dispositive of this matter: whether the trial court erred in finding that Park 100 used fraudulent means to procure the signatures of the Karteses on the guaranty of lease.

## DISCUSSION[2]

Upon the motion of Park 100, the trial court entered thorough and well-reasoned Findings of Facts and Conclusions of Law. When the trial court enters special Findings of Fact and Conclusions of Law

---

1. The parties dispute the size of the document Scannell presented to the Karteses. Mr. Kartes testified that the document included approximately fifteen pages, while Scannell maintained that he only presented the two-page guaranty of lease to the Kartes. Combined, the lease agreement and guaranty total 17 pages. The trial court specifically found that Mr. Kartes's testimony was clear, complete, and highly credible, whereas Scannell's testimony was sketchy, inconsistent at best, and far less credible than Mr. Kartes's testimony.

2. In its Brief, Appellant cites to *Harris v. People's Savings Corp.*, an unpublished decision of the Ohio Court of Appeals. Under the Ohio Supreme Court Rules for the Reporting of Opinions, Rule 2(G)(1)–(2), the cited decision may not be considered as persuasive authority, except in the judicial district in which the opinion was rendered. Thus, the *Harris* opinion may not be cited as persuasive authority in Indiana. Appellant also failed to include a copy of the unpublished decision in its Brief, as required in Rule 2(G)(3). We caution counsel against improperly

pursuant to a motion by a party, this court employs a two-tiered standard of review. First, we must determine whether the findings support the judgment. The second inquiry is whether the conclusions and judgment are clearly erroneous based on the facts as found by the trial court. *American Cyanamid Co. v. Stephen* (1993), Ind.App., 623 N.E.2d 1065, 1070.

The trial court found that Park 100 obtained the signatures of the Karteses on the personal guaranty of lease through fraudulent means. Under Indiana law, the elements of actual fraud are as follows:

(1) A material misrepresentation of past or existing fact by the party to be charged, which

(2) was false,

(3) was made with knowledge or in reckless ignorance of the falsity,

(4) was relied upon by the complaining party, and

(5) proximately caused the complaining party injury.

*Pugh's IGA v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1197, *reh'g denied, trans. denied.* In its findings and conclusions, the trial court found: (1) The statements made by Scannell, Park 100's agent, that the personal guaranty was "lease papers" and that KVC could not move into the building until the papers were signed, were each misrepresentations of material facts; (2) Scannell knew that the document he presented for the Karteses' signatures was a guaranty and, therefore, knowingly made false misrepresentations; and (3) the Karteses, through the use of ordinary care and diligence, believed that the document they were signing was a lease, and reasonably relied upon Scannell's statements to their detriment.

The evidence and testimony presented at trial supports these findings and conclusions. A guaranty of lease was never discussed during the lease negotiations, and the lease agreement makes no reference to a guaranty. The document that Scannell presented to the Karteses was entitled "Lease Agreement" and Scannell never told the Karteses that they were signing a personal guaranty of lease, even when he overheard the telephone conversation in which Mr. Kartes asked Kaplan if the lease agreement had been approved by KVC's lawyer.[3]

Park 100 argues that the Karteses failed to prove the third element of actual fraud, that of reliance. Park 100 summarily argues that one's reliance upon a material misrepresentation must be justified and, in an arm's-length relationship involving knowledgeable business people such as the Karteses, such reliance is misplaced. Park 100 concludes that the Karteses had a duty to read the document that they signed and cannot avoid their obligations under the agreement by claiming ignorance of its terms.

■■■ Generally, parties are obligated to know the terms of the agreement they are signing, and cannot avoid their obligations under the agreement due to a failure to read it. *W.T. Rawleigh Co. v. Snider* (1935), 207 Ind. 686, 690, 194 N.E. 356, 358; *Givan v. Masterson* (1898), 152 Ind. 127, 130, 51 N.E. 237, 238. However, where one employs misrepresentation to induce a party's obligation under a contract, one cannot bind the party to the terms of the agreement.

It has many times been held, and is a well-settled rule of law, that a contract of guaranty cannot be enforced by the guarantee, where the guarantor has been induced to enter into the contract by fraudulent misrepresentations or concealment on the part of the guarantee.

*Doerr v. Hibben Hollweg & Co.* (1926), 84 Ind.App. 239, 241–42, 150 N.E. 795, 796.

Scannell misrepresented the personal guaranty as "lease papers," and in furtherance of this misrepresentation, the personal guaranty was disguised under the title of "Lease Agreement." We are not persuaded by Park 100's argument that the Karteses

---

citing an unpublished decision as persuasive authority.

**3.** The trial court also found that Scannell had a duty to inform the Karteses that the document was a guaranty and not a lease, and that his silence was a fraudulent omission of a material fact. Park 100 argues that Scannell had no such

duty and that the trial court erred on this point. We need not address this argument because Scannell's express misrepresentations alone support the finding of actual fraud. *But see, Midwest Commerce Banking Co. v. Elkhart City Centre* (7th Cir.1993), 4 F.3d 521, 524 and cases cited therein.

cannot prove actual fraud because the Karteses should have known better than to rely on Scannell's representations.

"Whether one has the right to rely depends largely on the facts of the case." *Fire Ins. Exchange v. Bell* (1994), Ind.App., 634 N.E.2d 517, 522, *aff'd in part, vacated in part*, 643 N.E.2d 310. When Scannell presented the "lease papers," Mr. Kartes telephoned Kaplan. Only upon confirming that KVC's attorney had examined and approved the lease agreement did the Karteses affix their signatures to the document entitled "Lease Agreement." "While a person relying on another's representations must use ordinary care and diligence to guard against fraud, the requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practiced on the unwary." *Fire Ins. Exchange,* 634 N.E.2d at 521. The evidence supports the trial court's finding that the Karteses acted with ordinary care and diligence.

## *CONCLUSION*

Whether fraud is present in a case is rooted in the surrounding facts and circum-stances and is for the trial court to determine. *A.G. Edwards & Sons, Inc. v. Hilligoss* (1991), Ind.App., 597 N.E.2d 1, 3. We cannot reweigh the evidence and substitute our judgment for that of the trial court, as Park 100 invites us to do. *Wolfeld v. Hanika* (1932), 95 Ind.App. 44, 179 N.E. 178. The evidence supports the trial court's conclusion that Park 100 obtained the signatures of the Karteses on the personal guaranty of lease through fraudulent means, and the findings support the judgment. The trial court's conclusion and judgment in favor of James and Nancy Kartes are not clearly erroneous.

AFFIRMED.

RILEY, J., and SHARPNACK, C.J., concur.