**Louis Alvin BENNETT and Day & Night Transportation Services, Inc., Appellants (Defendants Below),**

v.

**Jonathon Ryan ANDRY, Appellee (Plaintiff Below).**

No. 49A04–9407–CV–269.

Court of Appeals of Indiana, Fourth District.

Feb. 28, 1995.

Franklin A. Safrin, Safrin & Associates, Jon C. Abernathy, Goodin & Kraege, Indianapolis, for appellants.

Roy T. Tabor, Susan W. Rempert, Tabor, Fels & Tabor, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Louis Alvin Bennett (Bennett) and Day & Night Transportation Services, Inc. (Day & Night), appeal from the denial of their motion to correct errors alleging the trial court erred in denying their motion to set aside Jonathon Ryan Andry's (Andry) default judgment entered against Bennett and Day & Night in the amount of $80,705.00.

We affirm.

### ISSUE

Whether the trial court abused its discretion in denying Bennett and Day & Night's Ind.Trial Rule 60(B) motion to set aside Andry's default judgment?

### FACTS

On April 18, 1990, Andry was operating his 1979 Mercury in the far right-hand lane of westbound I–465. At the same time, Bennett, a Day & Night employee, was operating a semi-tractor trailer westbound on I–465 in the lane next to Andry. Suddenly, the semi turned into the far right-hand lane occupied by Andry, struck the driver's door of Andry's car, and caused it to spin in front of the semi. The truck then struck the rear of Andry's car causing it to spin across three lanes of traffic into the interstate median.

Andry's car was "totaled" in the collision. Three weeks later, Carolina Casualty Insurance Company (Carolina), Bennett and Day & Night's insurer, settled Andry's property damage claim for $2,100.00. Settlement as to Andry's personal injury claim was not reached, however, and Andry retained the services of attorney Edward Goebel, Jr. to represent his interests. On July 29, 1991, Goebel notified Carolina that he represented Andry.

Settlement negotiations between Carolina and Goebel apparently met with little success and on April 16, 1992, nearly two years after the accident, Goebel filed suit against Bennett and Day & Night. The same day, Goebel sent a letter to Carolina which states in pertinent part:

> "Enclosed is a copy of the Complaint, which I filed on April 16, 1992, on behalf of my client Jonathon Ryan Andry, to toll the statute of limitations.
>
> It will not be necessary for you to have anyone enter an appearance or file an Answer on your behalf at this time. If we cannot negotiate a settlement in this matter, I will notify you in writing to have someone enter an appearance and file an Answer on your behalf. You may accept this letter to take no action until further notice from me."

R. at 29. Service of the complaint was obtained on both Bennett and Day & Night by certified mail on April 22, 1992.

In September of 1992, Andry and his father became dissatisfied with Goebel's services and hired another attorney, Mark E. Need. Goebel, however, did not release Andry's case file to Need. Nevertheless, in a letter to Carolina dated January 28, 1993, Goebel stated in pertinent part:

> "Mr. Andry and his father have requested that I withdraw my appearance as attorney of record on this file and have indicated to me that they will be hiring Mark E. Need to represent them. I am turning my file over to Mr. Andry on January 29.... I am sure Mr. Need will contact you as soon as he receives the file and enters his appearance on Jonathon's behalf."

R. at 69. Thereafter, on January 29, 1993, Andry and his father went to Goebel's office, obtained the file, and turned it over to Need. In his affidavit, Goebel claims that "to the best of his belief," he explained to Andry that

he "told representatives of Day and Night Transportation that it would not be necessary to seek representation to protect their interests." R. at 62–3. However, the affidavits of both Andry and his father deny Goebel's claim.

Additionally, Goebel claims that his April 16, 1992 letter to Carolina granting it an indefinite extension of time to answer was included in the Andry file. Upon receipt of the file, Need examined it to determine the status of the case. Need denies the letter was included in the file. Moreover, despite Goebel's claim to the contrary, Need insists that Goebel never informed him of the extension of time.

On February 3, 1993, Need entered his appearance on Andry's behalf and served copies upon Bennett and Day & Night—"as there was no attorney of record for them." Appellee's brief at 4. The same day, Goebel withdrew his appearance for Andry. Copies of the withdrawal were served upon Bennett and Day & Night. Subsequently, Need turned the Andry file over to co-counsel, Roy Tabor. Tabor's legal assistant claims the file not only did not contain Goebel's April 16, 1992 letter to Carolina, but also that the file did not contain a July 29, 1991 letter from Goebel to Carolina and three letters from Carolina to Goebel—all of which Goebel claims were included in the file.

On March 26, 1993, Tabor entered his appearance in the case and served copies of the appearance upon both Bennett and Day & Night. On April 13, 1993, Andry filed an application for default judgment which was granted by the trial court on the same day. On May 27, 1993, the trial court held a damage hearing and entered final judgment against Bennett and Day & Night for $80,-705.00. Neither Bennett nor Day & Night attended the hearing.

In a letter dated June 1, 1993, Andry's counsel notified Bennett, Day & Night, and Carolina of the default judgment. On August 23, 1993, both Bennett and Day & Night, through an attorney retained by Carolina, moved the court to set aside the default judgment pursuant to Ind.Trial Rule 60(B) on the grounds of excusable neglect and fraud claiming they relied on Goebel's promise that Carolina need not hire an attorney to file an answer unless settlement negotiations failed. A hearing was held on February 18, 1994, and the trial court denied the motion on February 22, 1994. Thereafter, Bennett and Day & Night filed a motion to correct errors alleging the trial court erred in failing to set aside the default judgment which, because the trial court did not rule upon it, was deemed denied. Ind.Trial Rule 53.3(A).

## DECISION

Our standard of review of the denial of a motion to set aside a default judgment pursuant to Ind.Trial Rule 60(B) is limited to determining whether the trial court abused its discretion. *Whelchel v. Community Hospitals* (1994), Ind.App., 629 N.E.2d 900, 902, *reh'g denied, trans. denied.* An abuse of discretion occurs where the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* The trial court's decision on a motion to set aside a default judgment is given substantial deference on appeal. *Id.*

T.R. 60(B) provides in pertinent part: On motion and upon such terms as are just the court may relieve a party ... from an entry of default ... for the following reasons:

(1) mistake, surprise, or excusable neglect....

Bennett and Day & Night contend the trial court abused its discretion in denying their motion to set aside the default judgment because their failure to file an appearance and answer was the result of mistake and excusable neglect which was directly caused by a "breakdown in communications." In support of their contention, Bennett and Day & Night direct our attention to *Whittaker v. Dail* (1992), Ind., 584 N.E.2d 1084, wherein our supreme court reversed the trial court's denial of the Defendant's motion to set aside a default judgment for the reason that a "breakdown in communication" had occurred between the Defendant's insurance company and the attorney it hired to defend the Defendant.

In *Whittaker*, the Defendant was sued for battery. The Defendant's second attorney filed an answer. After a series of continuances, trial was finally set for March 5, 1990. On January 31, 1990, the Defendant's latest attorneys withdrew from the case because the Defendant had not paid them. The Plaintiff then requested a pre-trial conference which was set one week before the trial. The Defendant did not appear for the pre-trial hearing; however, the trial court personally notified the Defendant by telephone that the cause was set for trial on March 5. On the day of trial, the Plaintiff appeared, but the Defendant did not. The trial court entered a default and proceeded to hear Plaintiff's evidence on damages. The trial court then entered judgment against the Defendant for $298,181.70.

Four days later, two new attorneys entered their appearance on the Defendant's behalf and filed a motion to set aside the default judgment. At the hearing, the Defendant presented evidence of self-defense. The Defendant also testified that after he received the trial court's notification of the March 5th trial date, he contacted Allstate Insurance and had the understanding that Allstate would employ an attorney for him. He further testified that he had not intentionally disregarded the trial court's notice. The Allstate claims adjuster testified that she had talked to the Defendant and was aware of the trial date. She attempted to employ a new attorney to represent the Defendant. However, the attorney testified that he was under the impression that he had been hired to file a declaratory judgment action against the Defendant, rather than to defend him.

The trial court denied the Defendant's motion to set aside the default judgment, and we affirmed. *See Whittaker v. Dail* (1991), Ind.App., 567 N.E.2d 816. On transfer, the supreme court reversed the entry of default judgment holding:

"The evidence presented by [the Defendant] at the hearing held on his motion to set aside the default judgment was clear and unequivocal. The obvious import of the evidence is that a 'breakdown in communication' occurred giving rise to [the Defendant's] legitimately-held belief that his insurance carrier would hire a lawyer to represent him. We agree with Judge Rucker's dissent which analogizes this case to the facts in *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288. We recognize that the precise holding of *Boles* is that a breakdown in communication between an insurance agent and an insurance carrier, resulting in a failure to employ counsel, is a sufficient basis to support a finding by the trial court that the default judgment should be set aside. Additionally, we further recognize that *Boles* does not stand for the proposition that *every* breakdown in communication *requires* that a judgment be set aside. Nevertheless, we hold that where the unchallenged credible testimony establishes a breakdown in communication which results in a party's failure to appear for trial, the grounds for setting aside a default judgment, as specified in Indiana Trial Rule 60, have been satisfied and the trial court should set aside such default judgment."

*Id.* at 1087 (emphasis in original).

Turning to the facts of the case before us, we find the *Whittaker* facts to be inapposite because our review of the record fails to reveal any evidence of a "breakdown of communication" similar to that in *Whittaker*. The evidence does not reveal a breakdown in communication between the insurance company and the attorney it hired to represent the defendant-insured as in *Whittaker*.[1] Rather, the evidence reveals that there was simply no communication between defendants Bennett and Day & Night's insurance company, Carolina, and plaintiff Andry's new attorneys, Need and Tabor. While Bennett

---

1. *See also Boles v. Weidner* (1983), Ind., 449 N.E.2d 288, wherein the Defendant notified his insurance agent of an automobile accident he was involved in and, upon being sued, gave the summons to that agent to be forwarded to the insurance company. The insurance company did not receive the summons, however, and the defendant was subsequently defaulted. Because the defendant had "taken the steps expected of him," the supreme court found that the evidence of the breakdown in communications between the agent and the insurance company was sufficient to support setting aside the default judgment. *Id.* at 291.

and Day & Night concede Need and Tabor were under no legal obligation to notify Carolina of their intent to take a default, they argue that common courtesy and the integrity of the bar dictate that such notification should have taken place. However, because evidence exists indicating Need and Tabor had no knowledge of Goebel's grant of an indefinite extension of time to Carolina, we cannot say that the trial court abused its discretion in denying the motion to set aside the default judgment.[2]

Furthermore, the evidence taken at the hearing to set aside the default judgment in *Whittaker* reveals that the persons concerned, including the Defendant, were actively taking steps to ensure the Defendant's interests were protected. No such evidence exists here. Bennett neither testified nor filed an affidavit. Similarly, no representatives from Day & Night or Carolina testified or filed affidavits. Thus, our review of the record before us fails to reveal any effort on the part of Bennett, Day & Night, or Carolina to protect the interests of Bennett and Day & Night.

To begin with, there is no evidence of any communication between defendants Bennett and Day & Night and Carolina during any stage of the proceedings. There is no evidence that Bennett and Day & Night knew of, or relied on, attorney Goebel's grant of an indefinite extension of time to appear and answer Andry's complaint. No evidence exists indicating that Bennett and Day & Night notified Carolina concerning the change in Andry's counsel after each received copies of Need and Tabor's appearances. Likewise, no evidence exists that Carolina took any steps to protect the interests of its insureds after Goebel notified Carolina that he no longer represented Andry, or that Carolina, in fact, relied upon Goebel's grant of the indefinite extension of time after it received that notice. Rather, it would appear that each of these parties passively allowed the legal process to move on without them.

■ Even if we accepted Bennett and Day & Night's characterization of the facts as a "breakdown in communication," we cannot say that the circumstances in this case warrant an intrusion on the trial court's discretion. *See Whittaker, supra* at 1087 ("not ... *every* breakdown in communication *requires* that a judgment be set aside." (Emphasis in original)).[3] The trial court did not err.

■ Aside from providing a trial court with the authority to set aside a default judgment for mistake, surprise, or excusable neglect, T.R. 60(B) also provides that a trial

**2.** *See Boles, supra* note 1, wherein our supreme court recognized that no legal duty exists on the part of a plaintiff's counsel to notify the defendant's insurance company of the existence of a lawsuit, acknowledged the importance of common courtesy, but stated:

[O]f course, counsel's failure to notify the carrier of the lawsuit would not, standing alone, justify the trial court in setting aside the default judgment.

*Id.* at 290.

**3.** Bennett and Day & Night also analogize the facts before us to those in *Condon v. Patel* (1984), Ind.App., 459 N.E.2d 1205, in an effort to persuade us that the trial court abused its discretion in failing to set aside the default judgment on the theory of mistake, surprise and excusable neglect.

In *Condon,* according to the Defendants' insurance representative's affidavit, the Plaintiff's attorney granted the insurance company an indefinite extension of time to appear and answer after suit was filed. Although the Defendants never filed an answer, the evidence revealed the Defendants' insurance company made extensive efforts, which were ignored, to contact Plaintiff's attorney in an attempt to resolve the case. Approximately ten months after suit was filed, the Plaintiff moved for, and was granted, a default judgment. The trial court denied the Defendants' motion to set aside the default judgment. On appeal, this court found:

We find that on this evidence the court was limited by the bounds of its discretion to a ruling that the [Defendants'] failure to plead was excusable because of their reasonable reliance on the agreement and on the representations of opposing counsel.

*Id.* at 1207. We fail to see how the facts of the case before us are analogous to those of *Condon.* First of all, no evidence exists indicating that Carolina in fact relied upon Goebel's representation concerning the extension of time after Goebel was discharged. Secondly, *Condon* involved the representations of one attorney, who failed to respond to the inquiries of the Defendants' insurance company, as opposed to an insurance company, Carolina, which was informed of the hange in attorneys by the very attorney who granted the indefinite extension of time, and which thereafter made no effort to protect the interests of its insureds.

court may relieve a party from an entry of default for "fraud ... misrepresentation, or other misconduct of an adverse party." T.R. 60(B)(3). Accordingly, Bennett and Day & Night next argue that the trial court abused its discretion in denying their motion to set aside the default judgment because, they claim, the default judgment "was procured by fraud and misrepresentation." Appellant's brief at 9. Bennett and Day & Night contend the facts in *Carvey v. Indiana National Bank* (1978), 176 Ind.App. 152, 374 N.E.2d 1173, are on point with those of the instant case.

In *Carvey,* the Defendant, who was an attorney, offered to pay his pro rata share of a guaranteed debt to the plaintiff, Bank. An attorney for the Bank informed the Defendant that although his offer was acceptable to the Bank, the Bank would sue all guarantors, including the Defendant, in an effort to encourage settlement between uncooperative co-guarantors. The Defendant told the attorney he would not actively defend such a lawsuit, but would be ready to pay his pro rata share at any time.

Suit was filed against five of the guarantors and service of process was made upon the Defendant. The Defendant neither appeared nor answered. Approximately two months later, the Bank filed a notice of application for default judgment upon the Defendant. The Defendant filed an answer, including an affirmative defense, and hand-delivered a copy of the answer to the law firm representing the Bank.

The Defendant reached another attorney in the law firm who acknowledged that the Defendant was no longer in default, and promised to inform the first attorney of the Defendant's position about paying his pro rata share. Based on this telephone conversation, the Defendant did not appear for the scheduled default hearing at which the Bank falsely alleged that the Defendant had not filed an answer and thereafter obtained a default judgment. The Defendant filed a motion to set aside the default judgment, among other motions, which the trial court denied.

On appeal, the Defendant contended the facts indicated the Bank obtained the default judgment against him by misrepresentation. Essentially, this court agreed, holding the trial court abused its discretion in failing to set aside the default judgment.

Bennett and Day & Night now argue:

"In the case at bar, but for the representations and promises of the Plaintiff's first attorney, Mr. Goebel, the Defendants would have appeared and defended the case. This fact makes this case on point with the *Carvey* decision. *Carvey* did not appear and defend the lawsuit because of the assurances he received from plaintiff's counsel. As it was fraudulent of Plaintiff's counsel to seek a default after representing to Carvey that he did not need to appear and defend, so it was fraudulent of the Plaintiff in this case to do the same."

Appellant's brief at 10–11. Because the facts of the instant case are dissimilar to those of *Carvey,* we must disagree with Bennett and Day & Night's contention.

As we discussed in our analysis of *Whittaker,* no evidence exists which indicates Bennett or Day & Night knew of Goebel's grant of an indefinite extension of time to answer, nor is there evidence they relied on that representation after Andry's new attorneys notified them of their appearance. Similarly, no evidence exists that Carolina relied on Goebel's representation after Goebel informed Carolina that he no longer represented Andry. In any case, evidence does exist which indicates that neither Andry nor his new attorneys knew of Goebel's indefinite extension of time. Furthermore, in *Carvey,* the facts indicate the Defendant was willing to cooperate, and that he actively attempted to represent his interests in the case. No such evidence exists here. Thus, we can not say the trial court abused its discretion in denying Bennett and Day & Night's motion to set aside the default judgment on the theory of fraud or misrepresentation.

■ Finally, we note that Indiana law requires a defendant seeking to set aside a default judgment to establish not only the existence of grounds for relief under T.R. 60(B), but also a meritorious defense to the judgment. *Langdon v. Langdon* (1994), Ind. App., 641 N.E.2d 673, 674; *See also Chelo-*

*vich v. Ruff & Silvian Agency* (1990), Ind. App., 551 N.E.2d 890, 892; *Whelchel v. Community Hospitals* (1994), Ind.App., 629 N.E.2d 900, 903, *reh'g denied, trans. denied; LaPalme v. Romero* (1993), Ind.App., 606 N.E.2d 882, 884, *opinion vacated in part on different issue by LaPalme v. Romero* (1993), Ind., 621 N.E.2d 1102, *reh'g denied; State, DNR v. Van Keppel* (1991), Ind.App., 583 N.E.2d 161, 163, *trans. denied.*

■ A meritorious defense is one showing, if the case was retried on the merits, a different result would be reached. *Chelovich, supra.* Indiana requires a party seeking to set aside a judgment to make a *prima facie* showing of a good and meritorious defense. *Id.* A mere allegation that except for the excusable neglect the action would have been defended is insufficient to set aside a judgment. *Id.*

■ First, in its response to Bennett and Day & Night's motion to set aside the default judgment, then at the hearing upon the motion, and now on appeal, Andry points out that Bennett and Day & Night have wholly failed to present evidence of a meritorious defense. In response, Bennett and Day & Night maintain that "counsel for the Defendants presented the trial judge with a meritorious defense at the Hearing to Set aside the Default Judgment," and refer us to pages 301–4 of the record. Appellant's brief at 6.

Pages 301–4 of the record reveal, in pertinent part, the following argument by counsel for Bennett and Day & Night:

"It is the position of the defendants in this case that it is not necessary under a 60(B) Motion to come in and file affidavits on a meritorious defense. If we come into court and state that there may be an issue of fact as to the cause of the accident, that should be sufficient to allow the defendants to proceed forward with the term meritorious defense under a default judgment ... Under fraud or misrepresentation, I don't think that we have to go that far to assert a meritorious defense, but *we have set it up in our Supplemental Memorandum* that there was a meritorious defense to this action, I do not have to present affidavits to this Court ... It is the position of the defendants that they have a meritorious defense, it is the position of the defendants that the plaintiff may have been contributory [sic] negligent or proximately caused his injuries, regardless of what he may have said [at the damages hearing]. ..."

(Emphasis added.)

Our review of Bennett and Day & Night's supplemental memorandum in support of its motion to set aside the default judgment reveals the following with respect to their "meritorious defense:"

"In this case defendants state there is an issue of a substantial amount of money, and the Plaintiff obtained a default judgment ... without having the case tried on its merits due to the excusable neglect of the Defendants and fraud on the part of the Plaintiffs. The Defendants also have a meritorious defense to the cause to action. There is a question of liability according to the facts the defendants have discovered through their investigation."

R. at 58.

■ In showing a meritorious defense, the catalyst needed to obtain the proper relief is *some admissible evidence* which may be in the form of an affidavit, testimony of witnesses, or other evidence obtained through discovery. *Chelovich, supra,* (emphasis added). Some admissible evidence must be presented to the trial court which would indicate the judgment would not remain unchanged and an injustice would be foisted upon the defaulted party if the judgment is allowed to stand. *Id.*

We find the references to a meritorious defense at the hearing to set aside the default judgment and in the supplemental memorandum to be mere allegations, as opposed to evidence, and, as such, they do not establish the existence of a meritorious defense. Furthermore, despite Bennett and Day & Night's contention "[p]laintiff's cause of action is replete with significant factual issues in dispute as to liability and damages," Appellant's brief at 6, our review of the record reveals that Bennett and Day & Night failed to present any *evidence* on the merits of the case to the trial court—let alone evi-

dence of a meritorious defense. Accordingly, we find the trial court did not abuse its discretion in denying Bennett and Day & Night's motion to set aside the default judgment.

Affirmed.

BAKER, J., concurs with separate opinion.

HOFFMAN, J., dissents with separate opinion.

BAKER, Judge, concurring.

While I agree with the majority that the defendants did not advance a meritorious defense and that there was no fraud on the part of plaintiff's new attorneys, I disagree with the majority's analysis regarding excusable neglect. Nevertheless, I concur in the result that the majority reaches because I believe the dispositive issue in this case is that the defendants failed to present a meritorious defense. Because this issue is dispositive, the majority's analysis of the excusable neglect and fraud issues is unnecessary.

The majority correctly notes that a defendant seeking to set aside a default judgment must establish not only the existence of grounds for relief under T.R. 60(B), but also a meritorious defense to the judgment. *Langdon v. Langdon* (1994), Ind.App., 641 N.E.2d 673, 674. Here, the record reveals that Bennett and Day & Night failed to present evidence to the trial court establishing a defense on the merits of the case. Because Bennett and Day & Night failed to satisfy the second prong of the test for setting aside a default judgment, the majority was not obliged to reach the issues of whether there were grounds for relief under T.R. 60(B) for fraud or excusable neglect.

Notwithstanding the fact that it was unnecessary for the majority to address the issue of excusable neglect, they did so and I disagree with the majority's analysis. The evidence is uncontroverted that Goebel's letter containing his representation that the defendants need not appear and defend themselves was sent to and received by Bennett and Day & Night. Our supreme court has noted that under the Tenets of Professional Courtesy a lawyer should always act pursuant to the maxim "My word is my

bond." *Fire Ins. Exchange v. Bell by Bell* (1994), Ind., 643 N.E.2d 310, 312. The reliability of lawyers' representations is an integral component of the fair and efficient administration of justice. *Id.* at 313. The law should promote lawyers' care in making statements that are accurate and trustworthy and should foster the reliance upon such statements by others. *Id.* Thus, it was reasonable for Bennett and Day & Night to rely on Goebel's representation and not defend themselves. Although I believe their neglect was excusable, the defendants failed to advance a meritorious defense and thus did not satisfy the second requirement for setting aside a default judgment. Accordingly, the trial court's denial of the defendant's motion was proper.

For the above-stated reasons, I concur in result on the issue concerning the defendant's failure to advance a meritorious defense.

HOFFMAN, Judge, dissenting.

I respectfully dissent. An attorney's representations are binding upon his client. *See Mirka v. Fairfield of America, Inc.* (1994), Ind.App., 627 N.E.2d 449, 450 n. 1 (in absence of fraud by attorney, client is bound by action of attorney even if attorney commits gross negligence); *Farm Credit Services v. East of Decker* (1993), Ind.App., 624 N.E.2d 491, 495 (general and long standing rule that absent fraud by attorney or collusion between attorney and opposing side, acts or omissions of attorney attributable to client). Here, it is established that Carolina received a letter from Andry's attorney at the time the complaint was filed, stating that the complaint need not be answered until Carolina was notified "in writing to have someone enter an appearance and file an Answer." Thus, Andry was bound to give notice of the necessity to file an answer prior to requesting a default judgment.

I would vote to reverse the trial court's decision.