**FIRE INSURANCE EXCHANGE, Illinois Farmers Insurance Company, Farmers Group, Inc. d/b/a Farmers Underwriters Association, Ice Miller Donadio & Ryan and Phillip R. Scaletta, Defendants–Appellants,**

v.

**Jason T. BELL, by His Guardian Ruby BELL, Plaintiff–Appellee.**

No. 49S02–9411–CV–1125.

Supreme Court of Indiana.

Nov. 28, 1994.

William P. Wooden, Daniel D. Trachtman, Wooden McLaughlin & Sterner, Indianapolis, for appellants.

Henry J. Price, Robert G. Barker, Jennifer L. Graham, Price & Barker, Indianapolis, for appellee.

On Petition To Transfer

DICKSON, Justice.

The principal issue in this case is whether, and to what extent, a party who is represented by counsel has the right to rely on a representation by opposing counsel during settlement negotiations. In this interlocutory appeal, the defendant-appellants, Fire Insurance Exchange, Illinois Farmers Insurance Company, and Farmers Group, Inc., d/b/a Farmers Underwriters Association (Farmers); the law firm of Ice Miller Donadio & Ryan (Ice Miller); and Phillip R. Scaletta (Scaletta), a partner in Ice Miller, are appealing the trial court's denial of their motions for summary judgment.

In denying the motions, the trial court determined that the question of whether plaintiff-appellee Jason T. Bell's legal counsel had the right to rely upon alleged misrepresentations regarding the policy limits is a question for the fact-finder. This issue was certified for interlocutory appeal by the trial court and accepted by the Court of Appeals, which affirmed the decision of the trial court. *Fire Ins. Exch. v. Bell* (1994), Ind.App. 634 N.E.2d 517. We grant transfer and affirm in part the opinion of the Court of Appeals.

The factual allegations favoring the plaintiff as non-moving party are as follows. On May 28, 1985, sixteen-month-old Jason Bell was severely burned in a fire at the Indianapolis home of Joseph Moore (Moore), Jason's grandfather. Gasoline had leaked onto the floor of Moore's utility room and was ignited by a water heater. The fire department cited Moore for the careless storage of gasoline. The carrier for Moore's homeowner's policy was Farmer's, whose claims manager was Dennis Shank (Shank) and whose attorney was Scaletta. Jason's mother, Ruby Bell (Bell), retained attorney Robert Collins to represent Jason regarding his claims for injuries sustained in the fire. Collins communicated with Scaletta and Shank on many occasions in an effort to obtain information regarding the insurance policy limits. By October, 1985, Farmers informed Scaletta that Moore's policy limits were $300,000. In February, 1986, Scaletta told Collins that he did not know the policy limits, even though Farmers had already provided Scaletta with this information. Collins claimed that Scaletta and Shank told him on separate occasions that Moore had a $100,000 policy limit. Scaletta confirmed his misrepresentation to Collins in a letter he wrote to Shank on February 14, 1986. When Jason's condition stabilized, Shank and Scaletta each represented to Collins that Farmers would pay the $100,000 policy limit. As a result of these conversations, Collins advised Bell to settle. The agreement was approved by the probate court, and after settling with Farmers, Bell filed a products liability action against the manufacturer of Moore's water heater. Through negotiations with the water heater company, Collins learned that Moore's homeowner's policy limits were actually $300,000. Collins informed Bell that he had been deceived and advised her to seek independent counsel to assert claims against Farmers and Ice Miller. Bell filed a com-

plaint against the appellants, alleging among other claims the fraudulent misrepresentation of the insurance policy limits.

▪ Ice Miller and Scaletta each contend that they were entitled to summary judgment because of the absence of the right to rely, a component of the reliance element required to prove fraud. They contend that Bell's attorney had, as a matter of law, no right to rely on the alleged misrepresentations because he was a trained professional involved in adversarial settlement negotiation and had access to the relevant facts. With respect to the claims of Farmers, we agree with the analysis of the Court of Appeals, including its discussion and application of *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630, and *Neff v. Indiana State Univ. Bd. of Trustees* (1989), Ind.App., 538 N.E.2d 255, and its conclusion that whether Collins had the right to rely upon the alleged misrepresentations by Farmers is a question of fact for the jury to decide. As to the appellate contentions of Farmers, we summarily affirm the opinion of the Court of Appeals. Indiana Appellate Rule 11(b)(3).

▪ With respect to the alleged misrepresentations of Scaletta and Ice Miller, however, we grant transfer to recognize a separate and more demanding standard. This Court has a particular constitutional responsibility with respect to the supervision of the practice of law. Ind. Const. art. VII, § 4. The reliability and trustworthiness of attorney representations constitute an important component of the efficient administration of justice. A lawyer's representations have long been accorded a particular expectation of honesty and trustworthiness.

Commitment to these values begins with the oath taken by every Indiana lawyer; it is formally embodied in rules of professional conduct, the violation of which may result in the imposition of severe sanctions; and it is repeatedly emphasized and reinforced by professional associations and organizations. The Indiana Oath of Attorneys includes the promise that a lawyer will employ "such means only as are consistent with truth." Ind.Admission and Discipline Rule 22. Indiana Professional Responsibility Rule 8.4 declares that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Numerous other sources of guidelines and standards for lawyer conduct emphasize this basic principle. The Preamble of the Standards for Professional Conduct within the Seventh Federal Judicial Circuit begins with the following statement:

A lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms. In fulfilling our duty to represent a client vigorously as lawyers, we will be mindful of our obligations to the administration of justice, which is a truth-seeking process designed to resolve human and societal problems in a rational, peaceful, and efficient manner.

143 F.R.D. 441, 448 (1992). The Seventh Circuit standards expressly include the following duty of lawyers to other counsel: "We will adhere to all express promises and to agreements with other counsel, whether oral or in writing . . . ." *Id.* at 449. Similarly, the Tenets of Professional Courtesy adopted by the Indianapolis Bar Association declare, "A lawyer should never knowingly deceive another lawyer or the court," and "A lawyer should honor promises or commitments to other lawyers and to the court, and should always act pursuant to the maxim, 'My word is my bond.'" *Tenets of Professional Courtesy,* Indianapolis Bar Association (1989).[1]

---

1. The Tenets of Professional Courtesy adopted by the Indianapolis Bar Association in 1989 provide:

In order to promote a high level of professional courtesy and improve the professional relationships among members of the Indianapolis Bar Association, the Board of Managers of the Association adopts the following Tenets of Professional Courtesy.

I
In all professional activity, a lawyer should maintain a cordial and respectful demeanor and should be guided by a fundamental sense of integrity and fair play.
II
A lawyer should never knowingly deceive another lawyer or the court.
III
A lawyer should honor promises or commitments to other lawyers and to the court, and

The International Association of Defense Counsel likewise emphasizes that "[w]e will honor all promises or commitments, whether oral or in writing, and strive to build a reputation for dignity, honesty and integrity." *See, e.g.*, 60 Def.Coun.J. 190 (1993).

Ice Miller and Scaletta contend that the plaintiff's attorney "had no right to rely on the representations he claims because he had the means to ascertain relevant facts, was in an adverse position, was educated, sophisticated and not involved in any dominant-subordinate relationship." Brief of Appellants Ice Miller Donadio & Ryan and Scaletta in Support of Petition to Transfer at 18–19. They further argue "that the relationship was adverse, the negotiations were protracted and that both sides were at all times represented by counsel," *id.* at 19, and emphasize that policy limits information was available to Bell's attorney from a variety of sources, including the rules of discovery.

We decline to require attorneys to burden unnecessarily the courts and litigation process with discovery to verify the truthfulness of material representations made by opposing counsel. The reliability of lawyers' representations is an integral component of the fair and efficient administration of justice. The law should promote lawyers' care in making statements that are accurate and trustworthy and should foster the reliance upon such statements by others.

We therefore reject the assertion of Ice Miller and Scaletta that Bell's attorney was, as a matter of law, not entitled to rely upon their representations. However, rather than finding this to be an issue of fact for determination at trial, as did our Court of Appeals, we hold that Bell's attorney's right to rely upon any material misrepresentations that may have been made by opposing counsel is established as a matter of law. The resolution of the questions of what representations

were actually made and the extent of reliance thereon are, along with any other remaining elements of plaintiff's case, issues of fact which must be determined at trial.

Transfer is granted. The opinion of the Court of Appeals is vacated in part and summarily affirmed in part. The trial court's denial of the motions for summary judgment filed by the defendant-appellants is affirmed. This cause is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, and SULLIVAN, JJ., concur.

GIVAN, J., concurs in result.

---

should always act pursuant to the maxim, 'My word is my bond.'

A lawyer should make all reasonable efforts to schedule matters with opposing counsel by agreement.

A lawyer should make all reasonable efforts to reach informal agreement on preliminary and procedural matters.

A lawyer should not abuse the judicial process by pursuing or opposing discovery arbitrarily or for the purpose of harassment or undue delay.

A lawyer should always be punctual in communications with others and in honoring scheduled appearances.